# Wytheville

## Cardozo v. Middle Atlantic Immigration Company, Inc.

### June 11, 1914.

1. Evidence—*Hearsay.*—A conversation between the agent of the plaintiff and a third person who is neither a party nor a privy to the contract sued on, in the absence of the defendant, is mere hearsay, and is not admissible in evidence against the defendant. Where such conversation bears upon a material and vital issue in the cause, its admission in evidence constitutes reversible error.

2. Evidence—*Verbal Contracts—Understanding of Party.*—Where an alleged contract was verbal and not clearly stated, and the vital question at issue between the parties is whether or not their minds met and concurred in all the essential elements of the contract, the defendant has the right to have his statement go to the jury as to what was his understanding of the contract relied on by the plaintiff although the plaintiff is claiming that the defendant had ratified the contract.

3. Corporations—*Declarations of Officers—Evidence.*—In an action on a contract by a corporation, where a witness has been permitted to testify to certain declarations of officers and agents of the corporation tending to show a liability on the defendant, other declarations of its officers and agents in the course of their employment, voluntarily made to the witness in the same conversation, tending to show that the corporation has no right to maintain the action are admissible in evidence.

4. Brokers—*Agent—Right to Sue.*—Where an agent for the sale of property has an interest in the contract, such as his commission, he can maintain a suit against the vendee to compel him to comply with his contract of purchase.

5. Brokers—*Real Estate Agent—Commissions—Duty of Vendor to Sue.*—In an action by a real estate broker to recover his commission, the question whether or not it was the duty of the vendor to have sued the vendee in a foreign jurisdiction to compel performance of the contract is one to be determined by the jury upon all the evidence in the case.

6. Brokers—*Principal and Agent—Fiduciaries—Disclosures.*—A brok-

er or agent who undertakes to procure a purchaser of property placed with him for sale is required to act in good faith in presenting a purchaser to his principal. It is his duty to place his principal in full possession of all facts bearing upon his personal relations to the subject and towards his prospective purchaser. It is not enough for him to say that he thought his principal was informed of all the facts, nor to be able to point out circumstances from which an inference might be drawn that his principal knew or had means of knowledge. Loyalty to his trust is the most important duty which the agent owes to his principal. So careful is the law in guarding this fiduciary relation that it will not allow an agent to act for himself and his principal, nor for two principals on the opposite side in the same transaction. All such transactions are voidable and may be repudiated by the principal, without showing that he was injured. In such cases, the amount of the consideration, the absence of undue advantage, and other like features are wholly immaterial. Nothing will defeat the principal's right of relief except his own confirmation, after full knowledge of all the facts.

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Haw & Haw,* for the plaintiff in error.

*Meredith & Cocke* and *Gregory & Boulware,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The judgment to which this writ of error was awarded is in favor of the defendant in error against the plaintiff in error for commissions on a sale of a certain tract of land situated in Powhatan and Cumberland counties,

known as the ''Cocke'' or ''Oakland'' tract, to one M. P. Casto, a citizen and resident of the State of Kansas.

Defendant in error (plaintiff below) is a Virginia corporation engaged in the sale of real estate, and in its declaration in this action, which is in assumpsit, bases its right of recovery of the plaintiff in error (defendant below) of the sum of $2,500, with interest, upon an agreement alleged to have been made between the plaintiff and defendant on or before the 30th day of June, 1910, whereby the defendant agreed that if the plaintiff would sell said property he would pay the plaintiff as a commission all that it could get therefor over and above the sum of $10,500; and the plaintiff avers that it did, on the 30th day of June, 1910, sell the property to said Casto for $13,000; that Casto was ready, able and willing to complete the purchase, and on said June 30, 1910, entered into a valid, binding and enforceable written contract with the defendant to take the property at the price named, which gave the plaintiff a commission of $2,500, etc., but that through the fault of the defendant the sale was not completed and the purchase money was not paid by Casto.

The material facts of the case appearing from the evidence viewed as upon a demurrer thereto, may be summarized as follows: On the 8th day of February, 1910, the defendant was the owner of the tract of land in question, containing about 1790 acres, and received that day through the mail, a letter from the plaintiff enclosing a form used by the plaintiff for listing lands, placed with it for sale, and the same day it was received, defendant, having filled in the blanks in the form and erased and corrected certain provisions contained therein, signed it and mailed it to the plaintiff with a letter in which he said: ''If you can sell same promptly and as per terms of contract, would shade the price some from $10.00 per

acre, as I am anxious to make a quick sale.'' This was the only contract written or oral between the parties relative to the sale of this land up to the day plaintiff claims to have sold the land, and, as defendant contends, the only contract ever made by him with the plaintiff, by which contract the price of the land was fixed at $17,900 and upon which plaintiff, if a sale was made, was to receive as its compensation ten *per cent.*—$1,790; and this contract was never changed or modified.

The defendant became the purchaser of this tract of land by reason of his attention being drawn to it by a Mr. Garrett, who was operating a saw-mill on the land under a contract by which he (Garrett) had bought the standing timber prior to defendant's attention being called to the land, and was induced by Garrett to purchase the land in order to give him (Garrett) longer time to cut and remove the timber. When defendant acquired title to the land he agreed to extend Garrett's time within which to cut and remove the timber, and also said to Garrett that if he could find a purchaser of the land at a certain price, defendant would sell and would divide with him all of the purchase money realized over the certain sum named.

At the trial of this case, upon the plea of the general issue, plaintiff attempted to explain some of its acts with respect to the alleged sale to Casto by proof that in 1910 and before June 30 of that year Garrett authorized it to sell said land for $10,500 net to the defendant; but there appears no evidence in the record to show that the defendant ever heard of this alleged conversation, and both the defendant and Garrett repudiated the contract sought to be set up by reason of the alleged conversation between the latter and Brown, an officer of the plaintiff corporation, except that Garrett admits that in January or February, 1910, he told Brown that Car-

d'ozo, the defendant, for a quick sale, would accept $10,-500. In June, Brown was in Richmond, and there met Casto whom Brown took to see the land. He showed Casto the land on the 29th of June, 1910, and during that day Casto stated that he would take the property at the price it was offered, $13,000. Brown being up in Cumberland that evening 'phoned Frayser, president of the plaintiff corporation at Richmond, that he could get $10,500 for the property, and to find out if the defendant would sell at that price. Frayser asked Brown what they were getting, and Brown replied: "It is not the question what we are getting, the question is whether you can get Mr. Cardozo to confirm what Mr. Garrett told me." That night (June 29) between eight and nine o'clock, Frayser 'phoned defendant to know if he would take $7,500, the amount that he (Frayser) understood Brown as naming, saying that he thought that was the amount which Brown had said that Garrett had authorized, and the defendant refused to consider the offer. Thereupon, Frayser called up Brown and told him defendant had refused $7,500, to which Brown replied that he (Frayser) was mistaken; that what he had 'phoned was to "ask Cardozo (defendant) whether he would take $10,500 net." Frayser failing to get defendant to the 'phone again that night, went the next morning (June 30) to see the defendant and told him of the mistake he had made in the amount net defendant was asked to accept for his land. At this interview defendant told Frayser that he would sell, on stated terms, the land for $10,500 net to him, but certain deferred payment notes secured on the land would have to be taken care of by the purchaser, and two years time was to be allowed for cutting and removing timber. Frayser, after that interview, at once wrote Brown, authorizing him to close the transaction, saying in the letter "we must get our com-

missions out of the first payment," not that they must get "all over and above $10,500 out of the first payment," as claimed in plaintiff's declaration, but its "commissions," plainly referring to the ten *per cent.* commission agreed on in the "listing contract" of February 8, 1910, which contained this important provision: "If an imperfect title prevents the consummation of a sale, I agree to pay expense of showing property." Frayser also wrote Brown in same letter: "Close the deal as soon as possible and come back with parties to Richmond to finish up," but instead of doing this Brown signed for the defendant a contract of sale to Casto, and the latter left the State that night or next morning. The next day, July 1, 1910, Frayser carried a short draft of a contract down to defendant, which contained, as he claimed, the terms agreed on the day before, except that it omitted to say that the purchaser would have to take care of the two deferred payment notes of $1,800 each; but upon reading this type-written agreement tendered by Frayser, defendant said he was not satisfied with it and promised Frayser to write him a letter stating on what terms he could sell the land, which he did that day. In this letter, which defendant claims was the only change or modification of the terms of the contract listing the property with the plaintiff as altered and signed by defendant February 8, 1910, he gave plaintiff authority to sell the tract of land in question as containing 1800 acres, more or less, "for the sum of $10,500 net to me," reserving rights to cut and remove timber therefrom for two years, and stating how the purchase money was to be paid and how secured, the letter concluding: "and it is distinctly understood that the above authority to sell is only extended for a period of ten days, unless extended by me. If the deal is not closed by that time, or reasonable cash payment made on same

to bind it, this authority to sell shall expire on July 10, 1910, without any further notice.''

Plaintiff admits that it made no effort whatever to sell this property under the ''listing contract'' of February 8, 1910, and certainly not prior to July 2, 1910, was defendant informed that the plaintiff had closed a written contract for the sale of it to Casto on June 30, 1910, for the sum of $13,000, of which $5,000 was paid by check to the plaintiff's order, and the balance to be secured and paid as stated in that contract, which contract was signed by Casto, and the plaintiff, styling itself agent for Cardozo, the defendant. In this contract it was provided that the defendant was to convey to Casto the property with good and sufficient warranty deed, and furnish abstract of title and plat. The plaintiff claims that the contract was made and its ''commissions'' earned by reason of Brown, its vice-president, being told by Garrett in March or April, 1910, that if he could get $10,500 net for the property he could make a sale, and to which Brown replied: ''This means it don't make any difference what we get in the way of commissions?'' Garrett replied, ''No,'' and Brown promised to get active about the matter.

On July 11, 1910, plaintiff brought to Richmond the check signed by Casto for $5,000, payable to the plaintiff at Medicine Lodge Bank, Kansas, which plaintiff endorsed and defendant received conditionally, as the receipt therefor shows—that is, that the check was to be forwarded by the defendant, ''with deed and deed of trust,'' through bank for collection. It being understood that as soon as bank reports the payment of said check I am to pay you (plaintiff) the sum of ($1,000) One Thousand Dollars, less the proportionate cost of collection, on account of the profit on the sale of said land. It is further understood that the balance of your

profit, amounting to Fifteen Hundred Dollars ($1,500) and which is included in the deferred payment notes, is to be paid you by me when the said notes are paid by the purchaser in equal instalments of $750.00 each . . . However, it is understood that I am in no way personally responsible should said notes or either of them remain unpaid.''

It is readily to be seen from this receipt for said check that any contract or understanding on the part of the defendant to pay to the plaintiff the compensation therein named was conditional on the check and the notes for the deferred payments being paid by Casto, whereby defendant would realize $10,500 *net* for the property. Had defendant known when he wrote his letter to the plaintiff on July 1, 1910, that the plaintiff had on June 29, 1910, received an offer from Casto of $13,000 for his property, and that Casto had signed a contract to purchase it at that price on June 30, 1910, doubtless defendant might have brought out more clearly than he did that he did not undertake and promise to pay the plaintiff a compensation amounting to $2,500 whether the deed spoken of in his letter went through and the purchase money for the property was paid or not.

On July 13, 1910, defendant through his home bank forwarded to a bank at Medicine Lodge, Kansas, the check given by Casto, and along with it a deed signed and properly executed by the defendant to Casto, and also a trust deed and notes for Casto to sign and execute, securing to defendant the purchase money for the land other than the cash payment. The bank to which these papers were sent was instructed by defendant to deliver the deed of conveyance to Casto upon his making and executing the notes and trust deed and paying the check, which papers were sent on at the instance of the plaintiff to await Casto's compliance with the terms upon

which the defendant had agreed to sell his property communicated to the plaintiff by his letter of July 1, 1910. An abstract of title which defendant had made when he purchased the property was tendered by him to Frayser, president of plaintiff corporation and an attorney selected by Frayser ran the title down from the time of the defendant's purchase, making an abstract of it, which the plaintiff sent to Casto and later Casto communicated with the plaintiff, setting up a number of objections to the form of the abstract, but no detailed objections to the title—at least none communicated to defendant according to his statement. A lengthy correspondence followed between Casto's attorney in Kansas and the plaintiff and its attorney here, who had run the abstract of title sent to Casto down to its final date, but the check of Casto remained unpaid. On September 2, 1910, defendant wrote his bank at Richmond that up to that morning he had not received any notice of any detailed objection to the title from the attorney of the plaintiff, in which letter defendant explained why and under what conditions he sent Casto the abstract of title or had anything to do with it, concluding his letter as follows: "The entire transaction looks queer to me, and I want the check either paid, certified or protested as stated above, and unless check is paid have all papers returned immediately. Prior to this and by letter dated August 23, 1910, defendant wrote plaintiff claiming that it was really the purchaser of the property in question and gave it until August 31, to comply with the terms upon which the defendant had agreed to sell, to which letter the plaintiff made no reply either orally or in writing. Pursuant to its instructions. the bank at Richmond wrote its correspondent bank in Kansas that after payment of the check was refused to protest it and return all papers, and as a result the Kansas bank sent back the check and the other papers.

According to defendant's contention, he had never read the contract made between Casto and the plaintiff, claiming to act as his (defendant's) agent, until the above mentioned papers, including the check, were returned to him on September 12, 1910, among which he found Casto's copy of the contract, and he at once notified plaintiff by letter of this, and that he looked to it (plaintiff) to complete the purchase on its own account, giving it a limited time within which to do so. To this letter plaintiff made no reply, but later instituted this suit, claiming that the defendant was indebted to it in the sum of $2,500, as its commissions for making the sale to Casto, that being the difference between $10,500 which defendant had fixed as the lowest price to him net, and $13,000, at which price it (plaintiff) claimed to have "found a purchaser who was ready, able and willing to take the property."

In the course of the trial numerous exceptions were taken to the rulings of the court, which are made the grounds of the assignments of error which this court is called upon to consider.

The first is to the action of the trial court permitting Brown, the vice-president and a stockholder of the plaintiff corporation, to relate, as a witness for the plaintiff and over the objection of the defendant, a conversation which witness claimed took place between him and Garrett, who is above referred to and who was neither party nor privy to the contract sued on. This conversation, upon which Brown claims to have acted in making the contract of sale with Casto, was not in the presence of the defendant, nor is there any proof in the record that he ever heard of it until Brown related it on the witness stand. Brown himself admitted that this conversation with Garrett was never, to his knowledge, repeated to the defendant prior to the sale to Casto. The state-

ment of the witness, Brown, was that Garrett authorized him to sell defendant's land at $10,500, and plaintiff to have all over that amount. This was several months after the defendant had listed the property for sale under a written contract with the plaintiff, which set forth the terms upon which defendant was willing to sell and fixed plaintiff's compensation in case it made a sale. The testimony given by Brown as to the conversation he had with Garrett, was purely hearsay, bearing upon a very material and vital issue in the case, and clearly it was error to permit the statement to go to the jury.

We do not attach any importance to the ruling of the court relied on in defendant's second assignment of error and will, therefore, not consider it further.

The third assignment of error relates to the court's refusal to allow the defendant, while testifying in the case, to answer certain questions propounded to him by his counsel. While testifying as to the transaction upon which this suit was brought, defendant stated: "I have always understood and they understood, I think, that they were buying the property, and that they expected to sell to Mr. Casto," but the court ruled the statement out; whereupon, the defendant was asked: "Mr. Cardozo, did your conversation and other dealings with these people cause you to believe, or did they leave you under the impression that they were purchasing the land from you?" to which question the witness would have made answer in the affirmative, but the court ruled the question out, and the defendant excepted.

The contract sued on was not in writing, whereby the parties would have been held to have agreed to what the plain and unambiguous language of the contract stated, or what was necessarily to be implied, but an alleged verbal contract not clearly stated, and the vital

question at issue between the parties was whether or not their minds had met and concurred in all of the essential elements of the contract, (*Belmont* v. *McAllister, ante* p. 285, 81 S. E. 81, and authorities cited); and although the plaintiff was claiming that the defendant had ratified this contract, he had the right to have his statement go to the jury as to what was his understanding of the contract relied on by the plaintiff, and it was therefore error to deny him this right.

Alfred B. Percy, a lawyer, who was connected with the conduct of a proposed suit against the said Casto growing out of a transaction similar to the one out of which this suit arose, and involving the same questions, was testifying for the defendant as to a conversation he had with the plaintiff's officers as to the acts and doings in the case that witness was interested in, and also with respect to the transaction between the plaintiff and defendant in this suit, and had shown that they were conferring and discussing as to suing for the enforcement of their contract—that is, whether the land owner or the plaintiff corporation, claiming to have acted as the agent of the owner, should sue, and that the conversation had reached the point involved in this suit; whereupon the witness was asked: "Was it said in that interview that they (plaintiff) had to enforce the Cardozo contract, and not Cardozo?" to which question the plaintiff objected, and the court sustained the objection. The answer that the witness would have made to the question was: "They said they had to enforce the Cardozo contract and not Cardozo" The trend of the witness, Percy's, testimony not excluded was to show that the plaintiff, before this suit was brought, considered that defendant was to receive $10,500 net to him before it (plaintiff) was entitled to any compensation for making the alleged sale of the property to Casto, and

its officers, therefore, admitted that it was the plaintiff's duty to enforce the contract of sale and not that of the defendant, saying that this contract was different from that made by Percy's client, Ardan, with Casto for the sale of property adjoining this property of defendant (Cardozo), which contract Ardan signed personally with full knowledge of the entire transaction, and this court is unable to see any reason for refusing to allow the witness to testify as to all of the conversation he had with plaintiff's officers with respect to which he had partially testified without objection. This evidence that the witness would have given had plaintiff's objection thereto been overruled would have strongly tended to prove an acknowledgment on the part of the plaintiff, voluntarily made, that defendant owed it nothing on account of its alleged transaction with Casto, until he (defendant) realized $10,500 *net* for his property.

The fifth assignment of error in the petition for this writ of error is too vague to require consideration.

The sixth assignment of error relates to the giving and refusal of instructions to the jury. Ten instructions were given for the plaintiff, and one by the court of its own motion; and all instructions, thirteen in number, asked by the defendant, were refused. We cannot undertake to review these instructions in detail—in fact, this is not necessary. It is to be borne in mind that the defendant never signed any contract with Casto, and further that the contract which was signed by Casto and by the plaintiff, styling itself agent for the defendant, as appears on its face and admitted by Brown who drew and signed the contract for the plaintiff, was not in accordance with the plaintiff's only authority to sell defendant's property, which was by virtue of the "listing contract" of February 9, 1910, and did not have a word in it about commissions or compensation to plaintiff;

so that, upon this state of undisputed facts, the whole question as to the contract between the plaintiff and the alleged purchaser rested on whether or not defendant had ratified that contract. The learned judge below took the view, as appears from a written memorandum filed by him and made a part of the record, "that there was a contract signed by the parties," and, generally stated, the issue was "whether the agent was authorized to make the sale upon the terms as made which had been ratified or accepted by the defendant upon a prior unconditional agreement to pay the commission," and the instructions to the jury proceeded upon that theory.

There was no prior agreement between plaintiff and defendant except the "listing contract" which fixed the price to be obtained for defendant's property and limited the plaintiff's compensation in case it made a sale to ten *per cent.* of the purchase money; and the only modification of the terms of that contract is to be found in the letter of the defendant to the plaintiff bearing date July 1, 1910, by which the defendant only agreed that the plaintiff might sell his property upon condition that the sale would net to him $10,500, and the purchase money paid in accordance with terms stated in the letter; and this authority to plaintiff to sell was limited to ten days from the date of the letter. True plaintiff brought to defendant on July 11, 1910, a check for $5,000 signed by Casto and made payable to the plaintiff as a cash payment on the property of the defendant, which plaintiff endorsed and which the defendant received, but the receipt therefor stated the conditions on which the check was received, viz: that the check would be attached and forwarded by defendant "with deed and deed of trust through bank for collection. It being understood that as soon as bank reports the payment of said check I am to pay you the sum of ($1,000.00) One Thousand Dollars,

less the proportionate cost of collection, on account of your part of the profit in the sale of said land. It is further understood that the balance of your profit amounting to Fifteen Hundred Dollars ($1,500.00), and which is included in the deferred payment notes, is to be paid you by me when the said notes are paid by the purchaser in equal instalments of $750.00 each, one when the first note is paid . . . However, it is understood that I am in no way personally responsible should said notes or either of them remain unpaid. . . . "

It will be observed that the defendant obligates himself in this letter to pay plaintiff compensation for making sale of his property only on condition that the check and deferred payment notes referred to were not allowed to remain unpaid. In this connection it is also to be borne in mind that according to defendant's contention he had not up to that time been informed that plaintiff had on the 30th of June, ten days prior, signed a contract as his agent agreeing to sell the property to Casto for $13,000, and that plaintiff admits that he knew nothing of this contract when it obtained from him the letter of July 1, 1910. The instructions given for the plaintiff were well calculated to mislead the jury to construe this receipt for the check as a ratification of the contract of sale to Casto, entered into by the plaintiff, styling itself as agent for the defendant "in every particular," although the evidence tended to prove that the defendant had then never seen that contract or been advised as to its terms and conditions. The instructions were not only misleading and erroneous in that respect, but in effect they told the jury that it was as well the defendant's duty to make Casto perform his part of that contract as it was his duty to perform it, instead of leaving the jury free to determine from all the facts and circumstances, which the evidence tended to prove, what was

the contract, if any, between plaintiff and defendant upon which the plaintiff was seeking a recovery in this action of a commission or compensation for making the alleged sale of defendant's property to Casto.

It was not only error to so instruct the jury, but the court erred in refusing instructions 1 and 3, asked by the defendant, having in view that the jury be directed to consider his theory as to what was in fact the contract between him and the plaintiff upon which the latter could alone recover in this action. These instructions are as follows:

"No. 1. The court instructs the jury that the issue made by the pleadings in this case is that the 'Defendant after he had entered into a valid and enforceable contract with one M. F. Casto failed to perform his part of said contract and because thereof the said sale was not consummated;' and the court further instructs the jury that the burden of proving the same rests upon the plaintiff, and that although they may believe that such a contract was made between the defendant and M. F. Casto, yet they must find for the defendant unless they further believe from the evidence that the defendant (Cardozo) failed in some material point to perform and carry out his part of the contract."

"No. 3. The court instructs the jury that as a general proposition of law, a broker is entitled to his commissions, when he has produced a purchaser, who is ready, able and willing to purchase the property of his principal upon the terms and at the price authorized and who has entered into a valid and enforceable contract with the principal; but this rule does not prevail where there was a special agreement between the broker and his principal as to payment of his commissions; and if the jury believe that Cardozo wrote a letter on July 1, 1910, to the plaintiff whereby he authorized the plaintiff

to sell his farm for $10,500 net to him, and that at a later date, to-wit: on July 11, 1910, he accepted from the plaintiff for collection the check of the proposed purchaser for $5,000.00 and gave to the plaintiff receipt therefor, wherein he provided that he would send the check through bank for collection, and that when said check was paid, he would pay to the plaintiff $1,000.00, less the plaintiff's part of any expenses of collection, and that when the deferred payments were paid he would, out of the collections therefor, pay the plaintiff the remainder of its compensation and that he further provided therein that he would not be responsible for the collection of the notes to be given for the deferred payments, then the jury are instructed that the letter of July 1, 1910, fixed the amount of compensation, which the plaintiff was to get, and that the letter of July 11 fixed the manner and conditions in which and upon which the same would be paid, and that the said two letters constitute the only contract upon which the plaintiff can claim any compensation in this case, and that unless the jury believe that it was through the fault of the defendant that the check was not collected and the deferred payment notes were not paid, that they must find for the defendant.''

The ninth instruction given for the plaintiff told the jury that if Casto was financially able to comply with his said contract and refused to do so, and defendant's title to the property he agreed to buy was good, then the defendant could have brought suit against Casto and recovered the amount that he had agreed to pay for the property under his contract with the defendant; that the plaintiff in this suit could not have sustained a suit against Casto to compel him to comply with his contract of purchase and unless the jury believed from the evidence that the plaintiff agreed to the defendant's abandoning said contract they might find for the plaintiff.

Clarke on Contracts, at pp. 736 and 737, states the law to be: "Where he (an agent) has an interest in a contract, such as his commissions, he can sue"—that is, he, the agent, can maintain a suit against the vendee to compel him to comply with his contract of purchase.

Instruction 9 was also erroneous in that it ruled that as a matter of law not only was it defendant's duty to have brought suit against Casto, but that as a matter of fact such a suit would have been successful, whereas the jury should have been left free to determine for themselves, from all the evidence in the case, whether or not the defendant was under an obligation to the plaintiff to endeavor by suit in a foreign jurisdiction to compel Casto to comply with his contract of June 30, 1910.

The court below, in instructing the jury for the plaintiff and in refusing the instructions asked by the defendant, plainly took the view of the case upon the facts that the evidence tended to prove that by reason of the defendant having in his letter of July 1, 1910, agreed to take for his property $10,500 *net to him* and received Casto's check for $5,000, *conditionally,* and on the date received sent the check through a bank at Richmond to a bank in Kansas for collection and along with the check a deed to be delivered to Casto when the check was paid and certain "papers" also sent with the check were duly executed by Casto, the defendant thereby ratified "in every respect" the contract of sale to Casto made for the defendant without his authority or knowledge, and that by so ratifying said contract the defendant became as much bound to pursue Casto in a foreign jurisdiction to compel him to comply with his contract as if he, the defendant, had himself signed this contract and was, therefore, fully advised as to its provisions and as to what obligations to the plaintiff with respect to pursuing Casto he was thereby assuming.

In this view of the case we cannot concur. True defendant received Casto's check which he tried to collect, and also executed a deed to Casto for the property, to be delivered when the check was paid and Casto had executed a trust deed on the property to secure the deferred payments of the purchase money, but this course of the defendant was not inconsistent with the contention made by him before and at the trial of this case, that he looked to the plaintiff and not to Casto for the payment of $10,500 *net to him* for his property. Any other view of the facts which the evidence in the case tended to prove would put the defendant in the anomalous position of agreeing to pay plaintiff the sum of $2,500 for making a sale of his property to Casto although defendant never realized a dollar from the transaction, and notwithstanding the failure of the plaintiff to perform its duty to inform him of all the material circumstances connected with the transaction upon which plaintiff would base its claim to the $2,500.

The authorities relied on as sustaining the rulings of the trial court in giving and refusing instructions to the jury are, in the main, cases where the agent procured a purchaser ready, willing and able to comply with the terms of the sale, and the purchaser and the vendor, or some one by his authority, had signed the contract of sale with full knowledge of all the material facts connected with the transaction, which is not the case here.

A broker or agent who undertakes to procure a purchaser of property placed with him for sale is required to act in good faith in presenting to his principal a purchaser. It is the duty of the agent to place his principal in full possession of the facts bearing upon his personal interest and relations to the subject and toward the prospective purchaser. It is not enough for the broker or agent to say that he thought his principal was ad-

vised as to all the facts, nor is it sufficient if he be able
to point out circumstances from which an inference
might be drawn, that the principal knew or had means
of knowledge. It may be true that the principal has suf-
fered no injury by reason of his ignorance of the facts,
but the law makes no such inquiry. In order to remove
temptation from the path of agents, as far as can be
done, it stamps, from motives of public policy, all such
dealings with the seal of its condemnation. Loyalty to
his trust is the most important duty which the agent
owes to his principal. Reliance upon his integrity, fidel-
ity and ability is the main consideration in the selection
of agents, and so careful is the law in guarding this
fiduciary relation that it will not allow an agent to act
for himself and his principal, nor to act for two princi-
pals on the opposite side in the same transaction. All
such transactions are voidable, and may be repudiated
by the principal, without showing that he was injured.
In such cases the amount of consideration, the absence
of undue advantage, and other like features are wholly
immaterial. Nothing will defeat the principal's right of
remedy except his own confirmation, after full knowl-
edge of all the facts. *Beury* v. *Davis,* 111 Va. 581, 69 S.
E. 1050, and authorities cited; *Francis* v. *Kline,* 96 Va.
201, 31 S. E. 10.

In the case at bar it is admitted that Brown, vice-
president, and Frayser, president, of plaintiff corpora-
tion, when the letter from defendant of July 1, 1910, was
written and mailed, agreeing to reduce his price for his
property and take therefor $10,500, *"net to me,"* with-
held from him the fact that the plaintiff had already
signed for him a contract to sell the property to Casto
for $13,000, and it is not positively denied that Frayser
led defendant to believe that plaintiff was getting only
about $11,000 for the property. As stated, defendant

wrote to the bank at Richmond which had forwarded Casto's check and "other papers" to the bank in Kansas, that the entire transaction looked queer to him and instructed the bank at Richmond that unless the check was paid or certified, he wished all the papers to be returned. Defendant also testified that he would have made a deed to Casto or anybody that plaintiff might have brought forward, able to make the cash payment, because he had agreed verbally on June 30, and in writing on July 1, 1910, to accept $10,500 for his property net to him, but says emphatically that if he had known on July 1st that plaintiff was getting $13,000 for the property and had in fact agreed in writing on the day before to a sale of it to Casto at that price, he would not have had anything to do with the transaction.

With this evidence in the case it was error to refuse defendant's instruction No. 6, which is as follows:

"The court instructs the jury that it is the duty of the broker or real estate agent to deal fairly with his principal, and if in this case the jury believe from the evidence that the plaintiff corporation had a contract with the defendant whereby it would receive 10 *per cent.* commission upon a sale of the farm belonging to the defendant, and that while said contract was in existence the plaintiff secured a purchaser for the farm of the defendant for $13,000.00, and that thereupon it notified the defendant that it had a purchaser for said farm and asked if the defendant would take $8,500.00 therefor, and upon the refusal to take said price, asked him if he would take $10,500.00 net therefor, and that in ignorance that the proposed purchaser had already agreed to pay $13,000.00 for said farm, the defendant agreed to take $10,500.00 net, and that thereby the plaintiff increased its compensation above that to which it would have been entitled under its original contract from $1,300.00 to

$2,500.00, then the jury are instructed that the plaintiff has not dealt fairly with the defendant and that he has not dealt with him as an agent should deal with his principal and that it cannot recover anything in this suit and they must find for the defendant.''

There are a number of other questions raised .in the petition for this writ of error, and which have been elaborately and ably argued by counsel, but they are questions that may or may not arise on another trial of the case, and we, therefore, consider it unnecessary to consider them in this opinion.

For the reasons stated, the judgment of the court below complained of is reversed, the verdict of the jury set aside, and the cause remanded for a new trial not in conflict with the views expressed in this opinion.

*Reversed.*